Trower Bros. Co. v. Hamilton.

---

THE TROWER BROTHERS COMPANY, Appellant, v. HAMILTON.

In Banc, January 15, 1904.

1. **Recording Chattel Mortgages:** NOTICE: LOCATION OF PROPERTY. Although cattle at the time they were described in a chattel mortgage as being on the mortgagor's farm in a certain county, were in fact at that time on that portion of the farm which lies in another county, yet if after the mortgage was recorded they were placed on that part of the farm which lies in the county where the mortgage was recorded and in which the mortgagor resided, and were kept there until shipped to market and sold to a purchaser without notice, they were covered by the mortgage, and the description and record were constructive notice to the purchaser of the mortgagee's lien.

Trower Bros. Co. v. Hamilton.

2. ———: CONTRACT: LEX LOCI. A note made in another State and dated and made payable there is a contract to be governed by the laws of that State, although at the time it was executed, as incident thereto, there was given as security for its payment a chattel mortgage upon personal property located in this State.

3. ———: ———: ———: USURY: VALIDITY OF LIEN. A note executed in Kansas and made payable there is not invalid because a usurious rate of interest is charged, nor is the validity of a chattel mortgage on property in this State affected by the usury, for the validity of the note must be determined by the laws of Kansas, which simply require the overcharge of interest to be credited as a payment on the debt.

4. ———: ———: ———: ———: APPLICATION OF MISSOURI STATUTE. Section 3710, Revised Statutes 1899, has no application to mortgages covering property in this State given to secure the performance of contracts made under the laws of another State. And even if by its terms it applies to such contracts it is to that extent in violation of the fourteenth amendment to the United States Constitution, since its effect would be to invalidate a mortgage given as security for the fulfillment of a contract valid in the State in which made.

Appeal from Nodaway Circuit Court.—*Hon. Gallatin Craig,* Judge.

REVERSED AND REMANDED.

*Lathrop, Morrow, Fox & Moore* for appellant.

(1) The court erred in holding that the description of the cattle in the mortgage was not sufficient. 5 Am. and Eng. Ency. Law (2 Ed.), 956; Jones on Chattel Mortgages (3 Ed.), sec. 53; 1 Cobbey on Chattel Mortgages, sec. 188; Elliott v. Long, 77 Tex. 467; Interstate Galloway Cattle Co. v. McLane, 42 Kan. 680; Jones v. Workman, 27 N. W. 158; Bank v. Bank, 19 S. W. 517; Bank v. Taylor, 98 Iowa 631; Holmes v. Commission Co., 81 Mo. App. 97; Bank v. Ragsdale, 158 Mo. 668; Kenyon v. Framel, 28 N. W. 37; State v. Cabanne, 14 Mo. App. 294; Corbin v. Kincaid, 33 Kan. 652; McVey v. English, 30 Kan. 368; Wilson v. Lillie, 20 Oh. 166; Frick v. Fritz, 88 N. Y. 961; Barton v. Sitlington, 128 Mo. 173;

Trower Bros. Co. v. Hamilton.

Drug Co. v. Self, 77 Mo. App. 284.   (2)   The note in controversy was not usurious according to the laws of Kansas.   State v. Elliot, 61 Kan. 519.   (3)   The note and mortgage constitute a Kansas contract, and being enforcible by the laws of Kansas are valid and enforcible in this State, notwithstanding section 3710, Revised Statutes 1899.   Cravens v. Ins. Co., 148 Mo. 584; DeWolf v. Johnson, 10 Wheat. 367; Andrews v. Pond, 13 Pet. 65; Cribben v. Dehoney, 69 S. W. 312; Stanley v. Railroad, 100 Mo. 435; Bowman v. Miller, 25 Gratt. 331; Sawyer v. Dickson, 48 S. W. 903; Vermont Loan & Trust Co. v. Dygert, 89 Fed. 123; Coghlan v. Railroad, 142 U. S. 109; Kuhn v. Morrison, 75 Fed. 81; Bank v. Cooper, 85 Mo. App. 383; Hamilton v. Fowler, 99 Fed. 18; Bank v. Young, 37 Mo. 407; Keim v. Vette, 167 Mo. 401; sec. 547, R. S. 1899.   (4) If it should be held that the Missouri statute had any extraterritorial force, and was sufficient to invalidate a mortgage given as security to a Kansas contract, it would be invalid under the fourteenth amendment of the Federal Constitution.   Allegyer v. Louisiana, 165 U. S. 578; Bedford v. Loan Association, 181 U. S. 241.   (5)   Plaintiff having complied with the law governing foreign corporations at the time of the trial, it is immaterial that it had not done so when the suit was brought.   Carson-Rand Co. v. Stern, 129 Mo. 381.

W. C. Ellison for respondent.

(1)   The note secured by the mortgage was unquestionably usurious under the laws of both Kansas and Missouri.   (2)   The mortgagor being domiciled in this State and the mortgage being on movables located in the State, to secure a Kansas note, usurious by the laws of both States, section 3710, Revised Statutes 1899, applies.   Our statutory regulations of mortgages of personal property, within the jurisdiction of the State, apply, regardless of the domicile of the owner or the *lex*

*loci contractus.* Bank v. Cassiday, 71 Mo. App. 196; Jones on Chattel Mortgages (4 Ed.), sec. 305; Ames Iron Works v. Warren, 76 Ind. 512; Dearing v. McKinnon, 165 N. Y. 78; Pleasanton v. Johnson, 91 Md. 637; Meares v. Finlayson (S. C.), 32 S. E. 986; Green v. Van Buskirk, 7 Wall. 139; Clark v. Tarbell, 58 N. H. 88. (3) Appellant is a foreign corporation, doing a general business in this State, and up to the commencement of this suit had not complied with the statutory provisions permitting it to do business here. The chattel mortgage is therefore void. The facts of the case relating to this proposition are, that appellant was incorporated in Kansas in January, 1899. Their principal office was located in the Exchange building at the Kansas City stockyards, through which building the dividing line between the States runs. A large portion, if not most of its business was done in Missouri, at Kansas City and in Saint Joseph, at which latter place it had a branch office. The business included the buying and selling of cattle for customers and the taking of notes and mortgages, such as are in this case. Certificate from the Secretary of State, as required by section 1025, Revised Statutes 1899, was not obtained until a month or so after the case at bar was commenced. At the trial it was admitted that no application for a license to do business in this State was made prior to the bringing of the suit, but the statute was complied with before the trial. Before the chattel mortgage could become operative, as to respondent, it was necessary for appellant to, and it did take, the mortgage to the county of the mortgagor's residence and there recorded it. This act was necessary to make the mortgage a completely executed instrument, so to speak, as against respondent. Thus it is seen that we have an instrument whose execution was perfected in Missouri, on property having its situs in Missouri, and which secured the performance of a contract (in so far as it related to the commission and the sale of the cattle) that was to be wholly performed in Missouri. One of

the principal objects of requiring foreign corporations to obtain a certificate authorizing them to do business in this State, was to force the payment of incorporating taxes and fees equal to those required of similar corporations formed within and under the laws of this State. If the statute referred to is to be so construed that foreign corporations doing business in the State may comply with the law and avoid the penalties thereof after a suit has been commenced, they will thereby be encouraged never to comply with the law until the necessity for it arises, and thus within the State's own jurisdiction they would be favored above similar home corporations. Ehrhardt v. Robertson Bros., 78 Mo. App. 404; Carson-Rand Co. v. Stern, 129 Mo. 381. (4) The court was right in holding that the description of the cattle in the mortgage was not sufficient. Furniture Co. v. Davis, 76 Mo. App. 512; Mackey v. Jenkins, 62 Mo. App. 618; Jones Bros. v. Long, 90 Mo. App. 618.

## In Banc.

BURGESS, J.—The following opinion heretofore rendered in Division Two is hereby adopted as the opinion of the Court in Banc.

All concur.

## In Division Two.

BURGESS, J.—This is an action of replevin for the possession of sixty-seven head of cattle. Plaintiff obtained possession of the cattle under the order of delivery, sold them, and had the proceeds arising from their sale at the time of the trial. The judgment of the lower court was against the plaintiff and its sureties on the replevin bond given in the case for the value of the property, and damages amounting to $1,400.80, from which plaintiff appeals.

The petition is in the usual form.    The answer is, first, a general denial, then proceeds as follows:

"This defendant further answering, says that all the cattle and stock taken from him·and his possession under and by virtue of the writ of replevin issued in said cause, were purchased by defendant on the 7th day of February, 1900, at Kansas City, in said State, of the Chicago Live Stock Commission Company, who was then and there in possession and the apparent owners of said stock and cattle; that defendant then and there purchased said cattle and stock in good faith and for value, to-wit, two thousand dollars, then and there paid by defendant to said commission company, and without having any notice of·any kind whatever of plaintiff's alleged claim or demand on said stock or cattle, and defendant had and retained the possession of said stock and cattle as the true and legal owner thereof from the time of his purchase aforesaid until taken under the writ of replevin aforesaid.    This defendant further states that he is the owner of said cattle and stock and demands judgment for the return thereof to him.

"Further answering, this defendant says that the alleged chattel mortgage and note mentioned in the petition were and are usurious in that they exact and embrace interest more than at the rate of eight or ten per cent per annum, contrary to and in violation of the laws of the State of Missouri and of Kansas then and at the time in·force.

"Further answering, this defendant says and admits that plaintiff is and at the date of the execution of said chattel mortgage, and for more than·a year prior thereto, was a corporation for gain and pecuniary profits organized and incorporated under and by virtue of the laws of the State of Kansas; that said plaintiff has never maintained or kept a public office in the State of Missouri, or any other office; that the plaintiff at any of the dates or time referred to in the petition did not file in the office of the Secretary of State for the State

of Missouri a copy of its charter or articles of incorporation or a copy of its certificate of incorporation duly certified by any officer or person, and did not at any time through any of its officers or agents forward to said Secretary of State any sworn or other statement relating to its stocks or business, and did not at any time pay any incorporation tax or other tax to the State of Missouri, and said plaintiff at no time aforesaid received from any officer of the State of Missouri a certificate as provided in section 1025 of the Revised Statutes of Missouri that during all the times aforesaid, the plaintiff not being a railway corporation, was and is doing a regular business in the State of Missouri, and in its business aforesaid took the mortgage and notes secured thereby mentioned in the petition and in violation of law.    Wherefore, defendant says said mortgage and surety are void and the property described in said mortgage is not subject to the provisions thereof as against this defendant.''

Plaintiff replied as follows:

''Comes now the said plaintiff, and for reply to the amended answer of the said defendant herein filed, says:

''It admits that the cattle in controversy herein were purchased by said defendant from the Chicago Live Stock Commission Company at Kansas City on the 7th day of February, 1900, and that said defendant had the possession of said cattle at the time of the commencement of this action.

''Plaintiff admits that it is a corporation created under the laws of the State of Kansas as alleged in defendant's answer.

''Further replying herein said plaintiff says that it denies that it has not filed in the office of the Secretary of State of the State of Missouri a copy of its charter or articles of incorporation, but alleges the fact to be that on the 13th day of October, 1900, upon application therefor it obtained from the Secretary of State of the

State of Missouri a certificate of authority or license to do business in the State of Missouri, and paid to the treasurer of said State of Missouri the tax or fees required by the statute to be paid by foreign corporations for a permit to do business in said State, and has in all respects complied with the requirements of the statute.

"Further replying herein, said plaintiff says that the contract under which the plaintiff claims the property in controversy herein was made, executed and delivered at the office of said plaintiff in the State of Kansas and as a part of the business transacted by said plaintiff at its said office in said State of Kansas, and when so made and delivered was and still is a good, valid and binding contract as against the said R. H. Muir therein mentioned as obligor and mortgagor and all persons claiming by, through or under him, and secured to said plaintiff a valid and subsisting lien upon the property mentioned in plaintiff's petition herein filed, until the full payment and satisfaction of the indebtedness evidenced by said notes and secured by said mortgage; that as relates to said contract and the rights of said plaintiff herein, section 1025 of the Revised Statutes of Missouri, referred to in the amended answer of the defendant herein filed, is unconstitutional and void, the same being in conflict with the provisions of section 10 of article 1, and section 2 of article 4 of the Constitution of the United States, and of section 1 of article 14 of the amendments to the Constitution of the United States.

"Further replying herein, said plaintiff says that it denies each and every allegation and averment in said defendant's answer contained not herein specially admitted to be true."

Briefly stated the salient facts are about as follows:

Plaintiff is a corporation organized under the laws of the State of Kansas, and doing business as a commission merchant in the Stockyards Exchange Building in Kansas City, Kansas. The plaintiff makes a practice of loaning money upon cattle of its customers, with

the understanding that the cattle when marketed shall be sold by the plaintiff company and the usual commission charged therefor, with the proviso that if the borrower does not ship his cattle to plaintiff company for sale, but sells them through some other commission merchant, he shall pay to the plaintiff a commission of fifty cents per head, the same as though the plaintiff company had actually sold them for the borrower.

At the time of the transaction involved in this case, R. H. Muir resided on his farm in Johnson county, Missouri. His farm was near the county line and a portion of it extended into Pettis county, Missouri. About the middle of September, 1899, Muir bought 101 head of cattle from F. S. Kerr. At the time of the purchase, the cattle were in two pastures near the town of Lingo in Henry county. When this sale was made, both Muir and Kerr came to the office of the plaintiff in Kansas City, Kansas, and arranged the purchase of the cattle, and Muir arranged for a loan of money from plaintiff with which to pay the purchase price to Kerr. Muir made his personal note, dated at Kansas City, Kansas, September 16, 1899, in the sum of $2,510.85, payable to the order of the plaintiff at its office in the Live Stock Exchange in Kansas City, Kansas, with interest at the rate of eight per cent from maturity. As security he executed a mortgage on the same date to secure the note, the mortgage, according to its terms, covering the following property:

"Three thousand bushels of corn, 60 hogs, and 108 head of southwest Missouri native cattle, one to three years old and upwards, average weight about 700 pounds and worth $3,000 now. For further and better description, said cattle are marked and branded as follows, viz.: The above 108 head of cattle consist of forty-two southwest Missouri native heifers, two years old; fifty-eight southwest Missouri steers (40 two and three years old, 18 yearlings), 1 bull; seven Missouri natives (6 yearling heifers, one half-year-old steer);

forty head now branded O on hip, balance to be branded same by October 1, 1899, except the seven head of Missouri natives. May have a few other brands, but none described. All dehorned except four or five. Also 3,-000 bushels of corn included in said mortgage, which is to be fed to the above cattle, and above cattle to be full fed. Also sixty head of hogs, average weight about 150 pounds. The same being now located on farm owned by R. H. Muir, four miles north of Rodelia, section 6, township 44, range 33, Johnson county, Missouri, and being all the property of the above description, owned or controlled by the mortgagor now on said premises, and this mortgage is intended to cover and include all of said property of the above description, and any addition and increase thereto, located on the above described premises and range, if any, thereabouts. The marks and brands used above to describe said property are the only marks and brands and carry the title, although said property may have other marks and brands.  .   .   . Said property to remain and be kept on the premises above described until the full payment of the indebtedness hereinafter described, unless sooner marketed or removed by and with the written consent of the mortgagee or its assigns.''

While the mortgage and note were dated September 16, 1899, and at that time delivered to or lodged with the plaintiff at its office in Kansas City, Kansas, the money was not advanced by the plaintiff until two or three days afterwards. As soon as the loan was arranged for and the note and mortgage given, Kerr and Muir went to the pasture where the cattle were located, near Lingo, and drove them to Muir's farm in Johnson county, Missouri, and branded them as by the mortgage provided. As soon as this was done they went to Kansas City and plaintiff then paid the money over to Muir, and Muir, in turn, paid it to Kerr. At that time all the cattle branded as provided in the mortgage were on Muir's farm in Johnson county, Missouri.

The mortgage was duly recorded in the office of the recorder of deeds for Johnson county, Missouri, on September 18, 1899. For the first thirty days after the cattle were branded they were pastured on that part of Muir's farm which extended into Pettis county, but at the expiration of that time, or about October 15th or 20th, they were returned to that portion of the farm in Johnson county, and there remained until shipped away by Muir, as hereafter stated.

When the cattle were placed on that portion of the Muir farm in Johnson county, all the terms of the mortgage were complied with. There were the number, brand and character of cattle described in the mortgage, and they constituted all of the cattle owned by Muir and upon his farm. The conditions as to location of the cattle remained the same until some time in November, when Muir without authority of the mortgagee shipped some thirty head of the mortgaged cattle to St. Louis and sold them through a commission house there to some parties residing in Carroll county, Illinois, to which point the cattle were taken. The balance of the herd continued to remain on the Muir farm in Johnson county until February 7th, on which date Muir, without authority of the mortgagee and without its knowledge, shipped 69 head of the mortgaged cattle to Kansas City where they were sold by the Cowgill Commission Company and the defendant, Hamilton, became the purchaser, giving his notes for the purchase money and taking the cattle to his farm in Nodaway county, Missouri, where they remained until replevined in this action.

Early in March, 1900, the plaintiff became advised that Muir had shipped out the mortgaged cattle, and immediately began an investigation. It traced the 30 head to Carroll county, Illinois, brought replevin suit, obtained the cattle, sold them and was successful in the replevin suit when it was tried on its merits.

The plaintiff also traced the 69 head of cattle involved in this case to the possession of the defendant and

brought this replevin suit and obtained possession of 67 head of the cattle.

Over the objection of defendant the court sitting as a jury declared the law to be as follows:

"1. A mortgagee of personal property, where the mortgage is duly executed and acknowledged and recorded in the office of the recorder of deeds of the county in which the mortgagor resides, upon maturity and non-payment of the indebtedness secured by such mortgage, becomes invested with the title and the right to the possession of the mortgaged property, and may maintain an action for the recovery of such property against a purchaser from said mortgagor, or against one in possession of said property, for the purpose of subjecting it to the payment of the indebtedness secured by said mortgage and remained unpaid.

"2. A mortgage recorded in the county where the mortgagor resides imparts full notice to every one who was or might become interested in the mortgaged property, and the removal of the mortgaged property to another county will not destroy or impair the lien of such mortgage. A purchaser of such property takes the same with notice of, and subject to the mortgage."

The following instructions asked by the plaintiff were refused and it duly excepted, to-wit:

"3. The court sitting as a jury, finds from the evidence in this case, that R. H. Muir executed and delivered to the Trower Brothers Company, at the office of said company in the State of Kansas, the note for $2,-510.85, of date September 16, 1899, introduced in evidence; that to secure the payment of said note the said R. H. Muir at the same time and place executed and delivered to said Trower Brothers Company the chattel mortgage introduced in evidence upon 108 head of cattle and other property in said mortgage described; that said mortgage was on or about the 18th day of September, 1899, recorded in the office of the recorder of deeds of Johnson county, Missouri; that at the time of the ex-

ecution and recording of said mortgage the said R. H. Muir resided in said Johnson county, Missouri; that the indebtedness secured by said mortgage has not been paid, but remains unpaid in whole or in part; that afterwards and before said note became due the said R. H. Muir, without the knowledge or consent of said Trower Brothers Company, shipped a portion of the cattle mentioned and described in said mortgage to the Cowgill Commission Company at the stock yards at Kansas City, and the same were there sold, and were then or afterwards purchased by the defendant herein; that the cattle sold by the said R. H. Muir and purchased by the defendant are the same cattle taken from the possession of the defendant under the writ of replevin herein, and in controversy in this action, and, that, prior to the commencement of this action, demand was made by or on behalf of said plaintiff upon the defendant for the possession of the cattle in controversy herein and possession thereof was refused.

"And upon the foregoing facts, the court declares the law to be that the defendant obtained no title to said cattle as against the rights of the plaintiff, and the plaintiff is entitled to a judgment herein for the possession of said cattle; and the fact that the defendant may have in good faith paid full value for said cattle does not impair the right of the plaintiff to recover herein.

"4. In determining whether any amount remains due and unpaid upon the note secured by the chattel mortgage from R. H. Muir to the plaintiff, introduced in evidence, the plaintiff, before applying any payments which may have been received by it, upon said note, is entitled to have deducted from the amount of such payments all reasonable costs and expenses incurred by said plaintiff in ascertaining where the cattle mentioned and described in said mortgage were after the same were removed from the farm of the said R. H. Muir in Johnson county, Missouri, and in obtaining possession thereof, together with all reasonable expenditures neces-

sarily incurred by said plaintiff in and about the litigation made necessary for the recovery of said cattle by reason of the sale of said cattle by the said R. H. Muir, and their removal from said farm.''

Thereupon, the court modified said declaration as follows:

''In determining whether any amount remains due and unpaid upon the note secured by the chattel mortage from R. H. Muir to the plaintiff, introduced in evidence, the plaintiff, before applying any payments, which may have been received by it, upon said note, is entitled to have deducted from the amount of such payments all reasonable costs and expenses incurred by said plaintiff in ascertaining where the cattle mentioned and described in said mortgage were after the same were removed from the farm of the said R. H. Muir in Johnson county, Missouri, and in obtaining possession thereof, together with all reasonable expenditures necessarily incurred by said plaintiff in and about the litigation made necessary for the recovery of said cattle by reason of the sale of said cattle by the said R. H. Muir, and their removal from said farm; provided the court finds that plaintiff is entitled to recover in this action.''

The above declaration numbered four, as modified, was given by the court. To the giving of said declaration, as modified, the plaintiff then and there excepted.

''5. The court, sitting as a jury, finds that the contract under which the plaintiff claims the property in controversy herein, was made, executed and delivered at its office in the State of Kansas, and as a part of the business transacted by said plaintiff at its said office in the said State of Kansas, and when so made and delivered was and still is a good, valid and binding contract as against the said R. H. Muir therein named as obligor and mortgagor and all persons claiming by, through or under him, and secured to said plaintiff a valid and subsisting lien upon the property mentioned and described in the mortgage mentioned in plaintiff's petition

until the full payment and satisfaction of the indebtedness evidenced by the note secured by said mortgage; and upon such facts, the court declares the law to be, that as relates to said contract and the rights of said plaintiff herein, section 1025 of the Revised Statutes of Missouri, referred to in the amended answer of the said defendant herein filed, is unconstitutional and void, the same being in conflict with the provisions of section 10 of article 1, and section 2 of article 4, of the Constitution of the United States, and of section 1 of article 14 of the amendments to the Constitution of the United States.''

The above declaration No. 5 was refused by the court, and the plaintiff then and there excepted.

Over the objection and exception of plaintiff the court declared the law in behalf of defendant as follows:

''1.   The court declares the law to be that under all the facts and circumstances in this case the finding should be in favor of the defendant.

''2.   The court, sitting as a jury, finds the facts to be that at the time of the execution and delivery of the chattel mortgage in evidence, and at the time the said mortgage was filed for record, the cattle in controversy were first in Henry county and from thence were moved to Pettis county, and were not located in Johnson county until after the recording of said mortgage.   The court further finds the facts to be that defendant on or about the —— day of February, 1900, purchased the said cattle in controversy at Kansas City, Missouri, and moved the same to Nodaway county, where he had them in his possession at the time they were taken under the replevin writ in this cause; that defendant was a purchaser of said cattle for value, in good faith and without any notice whatever of said mortgage or the record thereof, except such notice as the law implies from its having been recorded.

"3.  Applying the law to these facts the court declares the law to be that the description of the cattle in controversy in said mortgage was not sufficient to give the defendant constructive notice of the existence of such mortgage.

"4.  The court finds the facts to be that the consideration of the note in evidence, secured by the chattel mortgage in evidence, was not to exceed $2,387.12, and that there was no further or other consideration for said note.  The court further finds the fact to be that the face of said note is $2,510.85; that under the statute laws of Kansas, where said note was made, the highest contract rate of interest on notes of the character of this one, was and is, ten per cent per annum, and that all interest exacted or received or contracted for in excess of that rate is usurious.

"5.  On the facts above, the court declares the law to be that by the note in evidence and mortgage the plaintiff in this case exacted usurious interest; that said chattel mortgage securing said note was and is a contract required to be recorded in this State before becoming of any validity against this defendant, and in so far as it affects the issues in this case, is governed by the laws of this State with regard to the recording of chattel mortgages, and with regard to liens affected by usury as specified in section 3710 of the Revised Statutes of 1899.  The court therefore declares the law to be that as to this defendant, said chattel mortgage was and is void and of no effect."

The court, of its own motion, declared the law as follows:

"The court, sitting as a jury, finds the facts to be that the plaintiff at the date of the execution of the note and mortgage in evidence and for some time prior thereto, was and now is, a corporation, organized under the laws of, and located in, the State of Kansas; that said corporation during all of said time was, in the State of Missouri, transacting a general business in its cor-

porate capacity and in its line, which sometimes included the sale of cattle and the taking of notes and mortgages for purchase money; that said corporation did not in any manner comply with any of the provisions of sections 1024, 1025, of chapter 12, article 1, of the Revised Statutes of 1899, until after the commencement of this suit.

"9. The court, sitting as a jury, finds the facts to be that the cattle replevied in this case were turned over to plaintiff, under the writ, and have been, by plaintiff, sold and disposed of, and that plaintiff has not the possession of said cattle; that the value of the cattle replevied, at the time thereof, in their then condition and location, was $1,335.80, and that their present value, taken in their condition and location, as at the time they were taken, is the aforesaid sum; that, at the time said cattle were replevied, the defendant was the owner and entitled to the possession thereof, and, as such owner, is now entitled to the same and for taking and detaining the cattle under the writ, the court, sitting as a jury, assess the damages at sixty-five dollars."

To the giving of the above declarations of law numbered 8 and 9, plaintiff then and there excepted.

The first question with which we are confronted is with respect to the description of the cattle in the mortgage, which the trial court held not to be sufficient. It is said for defendant that vague and indefinite as the description is, it should be treated as sufficient if it were not for the last sentence in the description of the property, which reads as follows: "The same being now located on farm owned by R. H. Muir, four miles north of Rodelia, section 6, township 44, range 23, Johnson county, Missouri." That so far as this clause is concerned, the mortgagor may have owned other property of like description on other premises.

The point is, as we understand it, that at the time of the execution of the mortgage the cattle included therein were not upon the farm of the mortagor, Muir,

in Johnson county, but were taken there about the 17th or 18th of September, 1899, branded as specified in the mortgage to the Trower Brothers Company, and as defendant contends turned upon pasture in Pettis county. But they were not in Pettis county at that time, nor until after they were delivered or received by Muir upon his farm, and branded by him "to plaintiff."

The mortgage was recorded in the recorder's office of Johnson county on September 18, 1899. Thereafter defendant purchased the cattle in open market in Kansas City, Missouri, for a valuable consideration, and without any notice of plaintiff's claim of right thereto, other than that, if any, which was imparted by the record of the mortgage.

It is claimed that the record was not constructive notice because of the insufficient description of the cattle, in that they were not at the time of the execution of the mortgage upon Muir's farm in Johnson county, which is described as being in section six, township forty-four, range twenty-three, when in fact that section is all in the county of Pettis. Mackey v. Jenkins, 62 Mo. App. 618; Furniture Co. v. Davis, 76 Mo. App. 512; and Jones Bros. v. Long, 90 Mo. App. 8, are relied upon as sustaining that contention; but we think there is a very material difference between those cases and the one in hand, in this: in those cases the location of the property was necessary to its identity, its description otherwise being too general, and when the mortgages were signed the transactions were completed, but it was not so in the case at bar. In this case the mortgage and note were dated September 16, 1899, and at that time delivered to or lodged with the plaintiff at its office in Kansas City, Kansas; the money was not advanced by the plaintiff until two or three days afterwards. As soon as the loan was arranged for and the note and mortgage given, Kerr and Muir went to the pasture where the cattle were located, near Lingo, and drove them to Muir's farm in Johnson county, Missouri, and

branded them as by the mortgage provided.  As soon as this was done they went to Kansas City and plaintiff then paid the money over to Muir, and Muir, in turn, paid it over to Kerr.  At that time all the cattle branded as provided in the mortgage were on Muir's farm in Johnson county.

The mortgage was duly recorded in the office of recorder of deeds for Johnson county, on September 18, 1899.

When the cattle were placed upon that portion of the Muir farm in Johnson county, all the terms of the mortgage were complied with.  There were the number, brand and character of cattle as described in the mortage, and they constituted all of the cattle owned by Muir and upon his farm.  It was a continuous transaction from the time of procuring the loan, the purchase of the cattle by Muir, from Kerr, their transportation to Muir's farm and branding by him to Trower Brothers Company, the payment of the money by the company to Muir and the recording of the mortgage, and, even if it had been necessary (which we do not concede, as they were otherwise sufficiently described) to the validity of the mortgage that the cattle should be on the mortgagor's farm in Johnson county as recited in it, they were in legal contemplation on said farm, and when once there and branded to plaintiff there can be no question but that from that time at least, they were covered by the mortgage, and their removal from the farm thereafter did not have the effect of vitiating it.

In Iowa State National Bank v. Taylor, 98 Iowa 631, the mortgage described more cattle than the mortgagor owned and stated that they were on a certain farm when, in fact, they had not yet been placed there.  The court says:

"The fact that the mortgage purported to include more cattle than were there on the farm did not affect its validity with respect to those which were actually

placed there.   Nor do we think its validity was affected by the error in describing the place where the cattle were kept.   Donaldson had contracted for them and they were in fact placed on the Yeaman farm where they were required to be kept until July, within a week after the mortgage was executed and they were on the Beck farm, where they were required to be kept, after the first of July, when the plaintiff claims to have taken possession of them.   No prejudice to it could have resulted from the error.''

In Bank v. Ragsdale, 158 Mo. 668, the description of the cattle in the mortgage in controversy was as follows:   ''120 head of feeding cattle now on feed in Audrain county, Missouri.''

The court held the description sufficient, saying:

''The evidence tends to show that the cattle in suit belonged to Crockett Ragsdale and were, at the date of the mortgage, on feed in Audrain county.   Until he produces some evidence to show that he had another lot of cattle filling that description, and that it was the lot covered by the mortgage, and should have been taken under the writ, instead of this lot, the description will be held to refer to this lot.   He can not be heard to say that the description is so vague as to be meaningless, as long as the evidence shows a lot of cattle to which it may apply, nor can any one holding possession under his title make a similar objection.''

It follows that as defendant thereafter purchased the cattle,  he did so with notice of the mortgage.

By declaration of law numbered four given in behalf of defendant, the court finds that the amount of cash received by Muir was $2,387.12, while the note secured by the mortgage was for $2,510.85, and from that fact arrives at the conclusion that the note was usurious. This was upon the theory, which is evidently correct, that the note was a Kansas contract, as it declares that under the statute laws of that State the highest contract rate of interest upon notes is ten per cent per annum,

and all interest charged upon such instruments in excess of that amount is usurious. The questions, then, are by the laws of which State are we to be governed in passing upon the validity of the note and mortgage, Kansas or Missouri, and, are we governed by the laws of Kansas in regard to both note and mortgage? That the mortgage is incident to the note and would pass by its assignment and delivery, and only as incident to it, is clear, and while they were both executed in Kansas, the mortgage being upon property located in Missouri was required by law to be recorded in the recorder's office of the county where the mortgagor resided in order to be notice to purchasers of it.

DeWolf v. Johnson, 10 Wheat. 367, was a contract for the loan of money entered into in Rhode Island, secured by a mortgage upon lands in Kentucky, and it was held that the contract was governed by the laws of the former State and not by the laws of the latter State where the security was taken. The court said:

"With regard to the locality of the contract, we have no doubt that it must be governed by the law of Rhode Island. The proof is positive that it was entered into there, and there is nothing that can raise a question but the circumstance of its making a part of the contract that it should be secured by conveyances of Kentucky land. But the point is established, that the mere taking of foreign security does not alter the locality of the contract with regard to the legal interest. Taking foreign secuity does not necessarily draw after it the consequence that the contract is to be fulfilled where the security is taken. The legal fulfillment of a contract of loan, upon the part of the borrower, is repayment of the money, and the security given is but the means of securing what he has contracted for, which, in the eye of the law, is to pay where he borrowed, unless another place of payment be expressly designated by the contract. . . . Two preliminary questions

arose, the first of which was, whether the *lex loci* of the contract was Rhode Island or Kentucky. By the usury laws of the latter, the contract, and all the securities given for it, are void, both for principal and interest. Under the laws of the former, although it is prohibited to take more than six per cent interest, and a penalty imposed for the offense, the act does not render the contract void, certainly not for the principal sum. . . . It is not easy to discover how the taint of Rhode Island usury can infuse itself into the veins of a Kentucky contract.''

In Arnold v. Potter, 22 Iowa 194, it is held that when interest expressed is usurious, both by the law of the place where the contract was made and where it is to be executed, the law of the place where the contract was made will govern as to the consequences of the usury.

In Bowman v. Miller, 25 Gratt. 331, a resident of Virginia took a promissory note, made by himself and indorsed by other residents of Virginia, blank as to date and place of payment, to Maryland, where he inserted a date and place of payment in Maryland, and negotiated it at a rate of interest usurious under the laws of both States. By the laws of Maryland, usury only avoided a contract as to the excess of interest agreed; by those of Virginia it invalidates it. Suit on the note was brought in Virginia, and it was held that it was a Maryland contract, and not being void there, could be enforced in Virginia.

. The court said: ''What, then, is the Maryland law upon the subject of usurious contracts? Under its operation as found in this case a contract or evidence of debt, though tainted with usury, is not null and void; but it is a valid contract upon which an action may be maintained for recovery of the principal and interest actually due on said contract or evidence of debt; and it is only void to the extent of the usurious interest. . . . It is clear, therefore, that the notes of the de-

fendant executed in Maryland, and payable there, were valid securities.''

In Vermont Loan & Trust Co. v. Dygert, 89 Fed. 123, it is held:

''Notes dated in Washington and by their terms payable there, are governed by the law of that State as to usury, though the contract was made in Idaho, and the notes are secured by mortgage on property there, in the absence of the evidence of a design to evade the usury laws of the latter State.''

In Kuhn v. Morrison, 75 Fed. 81, it is held:

''The statutes of Tennessee, under which the lien of a mortgage is lost when the debt it secures is affected with usury, do not affect a mortgage executed in Tennessee, but covering land in Georgia, and securing a note made in Georgia, and payable there, and bearing a rate of interest which, though usurious in Tennessee, is legal in Georgia. A note was signed and dated in Georgia. A mortgage, given to secure it, was executed in Tennessee, and both note and mortgage were delivered and the money was paid in the latter State. *Held*, that the mortgage was a Tennessee contract, and subject to the laws of that State in respect to usury in the debt secured.''

In Central National Bank v. Cooper, 85 Mo. App. 383, in an action involving the application of section 3710, Revised Statutes 1899, a note and mortgage made in Kansas, it is held:

''The place of performance of a contract, in the absence of an attempt to evade the laws, furnishes the laws governing the terms of the contract; and so, a note payable in Kansas is a Kansas contract, although executed in Missouri, and is not usurious, although it bear ten per cent interest, that rate being unlawful in Missouri and valid in Kansas. The situs of a debt is not lost in the situs of the security, and a mortgage made in Missouri on property located in Missouri, to se-

cure payment of a Kansas note, is not usurious, and does not come under the ban of the statute.''

The law of Kansas, where the note and mortgage were executed, did not vitiate them because of the note containing usurious interest, but merely imposes a penalty for the exaction of usury, which, however, does not in any way impair the integrity or legal force of the obligation. The statute of that State provides that ''all payments of money or property by way of usurious interest, or of inducement to contract for more than ten per cent per annum, whether made in advance or not, shall be deemed and taken to be payments made on account of the principal and ten per cent interest per annum, and the courts shall render judgment for no greater sum than the balance found due after deducting the payments of money or property made as aforesaid.'' [Sec. 3592, Genl. Statutes of Kansas 1901.]

The note and mortgage being valid under the laws of the State where executed, there is no obstacle in the way to their enforcement under the laws of this State, unless it be because of plaintiff's failure to comply with sections 1025 and 1026, Revised Statutes 1899, before bringing suit, as section 3710, Revised Statutes 1899, has no application to such mortgages. But if it has, its effect is to invalidate a mortgage given as security to a Kansas contract, and is as to such contract invalid under the Fourteenth amendment of the Federal Constitution. [Allgeyer v. Louisiana, 165 U. S. 578; Bedford v. Loan Association, 181 U. S. 227.]

For these intimations the judgment should be reversed and the cause remanded. It is so ordered. All concur.