The Iowa State National Bank of Sioux City, Iowa, Appellant, v. Stewart Taylor, *et al.*

**Mortgage:** AFTER ACQUIRED PROPERTY. A chattel mortgage upon cattle described as owned by the mortgagor at the time the mortgage was given, and as being on a certain farm, does not cover cattle acquired by the mortgagor two months afterwards, as against a subsequent *bona fide* mortgagee.

DESCRIPTION. The validity of a mortgage on cattle on a given farm, is not affected as to those actually on said farms by the fact that it purports to include more cattle than there are there.

**Change of Possession:** EVIDENCE. The fact that a servant of an owner holds possession of chattels, for a third person, after being told by the latter that he has taken possession of the chattels, is, there being no apparent change of possession, insufficient as against a subsequent *bona fide* mortgagee.

**Principal and Agent:** RATIFICATION. That a principal negotiated a chattel mortgage upon cattle executed by the business manager of his farm, the mortgage also reciting that they were to be so kept thereon for a cer tain length of time, it not appearing that the agent owned any cattle, constitutes a ratification of the mortgage.

*Appeal from Monona District Court.*—HON. SCOTT M. LADD, Judge.

THURSDAY, MAY 28, 1896.

ACTION at law to recover the possession of specific personal property. There was a trial by the court, without a jury, and a judgment for the defendants. The plaintiff appeals.—*Affirmed.*

*Swan, Lawrence & Swan* and *McMillan & Kindall* for appellant.

*Stewart Taylor* and *George A. Oliver* for appellees.

ROBINSON, J.—The plaintiff claims the ownership and right of possession of one hundred three-year-old steers, which constitute the property in controversy, by virtue of a chattel mortgage, executed on the fourth day of February, 1893, by E. M. Donaldson, to secure the payment of a promissory note for the sum of five thousand dollars. The defendants deny that the plaintiff has any interest in, or right to possess the property, and the defendant, Taylor, disclaims any personal interest in it. When this action was commenced, he was in charge of the property, as the agent of his co-defendant, the American National Bank of Kansas City, Mo. That bank claims title and the right to possess the property, under a chattel mortgage, executed on the tenth day of May, 1893, by Thomas J. Zook, to secure the payment of a promissory note, for the sum of eight thousand five hundred dollars, held by the bank. The value of the steers is admitted to be three thousand dollars. They were taken by the plaintiff, under its writ of replevin, and sold. The district court found that the defendant bank was entitled to the possession of the steers, and

rendered judgment in its favor, and against the plaintiff and the sureties, on its replevin bond, for three thousand, two hundred and fifty-nine dollars and fifty cents and costs.

The district court was authorized to find that the evidence established the following facts: The description of property contained in the mortgage to the plaintiff was as follows: "(1) One hundred thirty (130) head of fattening hogs; (2) five thousand (5,000) bushels of corn; (3) one hundred (100) head of three-year-old steers. Said property to be kept on what is known as the 'Beck Farm,' belonging to the second party, situated near Onawa, Iowa. The steers to be kept on full feed on corn and grass. All of said property being now kept, as above stated, near Onawa, Iowa." The mortgage also contained the following: "And said party of the first part, for the purpose of obtaining credit with, and obtaining such money or moneys from, the party of the second part, as has now been or may hereafter be given, advanced, loaned, or supplied, under and upon the faith and security of these presents, and the provisions and statements herein contained, do solemnly swear that all of the property herein described belongs to and is the unqualified, absolute property of said party of the first part." At the time the mortgage was given, Donaldson did not have any steers on the Beck farm, and it is not shown that he owned any. On the first day of the next April he entered into an agreement in writing with Engle & Mustard, by which they agreed to sell him between three hundred and four hundred steers at specified prices per pound, to be taken to Onawa between the fifth and twelfth days of May. Five hundred dollars of the price were paid at the time the agreement was signed, and the remainder was to be paid when the steers should be delivered.

On the twelfth day of May the steers had not been delivered, and Donaldson was not present to receive them; but Zook appeared and made some arrangement under which they were delivered. Whether the delivery was made for Donaldson under his contract, or under a new contract by which Zook became the purchaser, is a matter of some dispute. From February to July, 1893, Zook was manager of one or more of Donaldson's farms, and purchased and sold cattle for him. Zook was also in the employment of the Campbell Commission Company. On the twelfth day of May he told Engle & Mustard that Donaldson was in Arkansas, and wished the cattle held for a few days. Between the twelfth and seventeenth days of May, Zook drew drafts on the Union Trust Company for sums which amounted to three thousand dollars, and which were paid. On the sixteenth, one hundred steers were driven to a place in Monona county which is known as the "Yeoman Farm." On the seventeenth, two hundred and fifty-six head were shipped to Omaha, consigned to Engle & Mustard. A draft for the balance due for all of the cattle, amounting to about ten thousand dollars, was drawn by Zook on the Campbell Commission Company, and given to Engle & Mustard, on their agreement to deliver to him the cattle shipped to Omaha, when the draft should be paid. It was paid, and the cattle were delivered to him according to the agreement. The one hundred steers which were sent to the Yeoman farm, remained there until about the first of July, when they were driven to the Beck farm. At that time the farm last named, was owned by Donaldson. On the fifth day of July, attorneys for the plaintiff visited the Beck farm, and told McNear, the man in charge of it, that they had taken possession of the cattle in question, under the plaintiff's mortgage, and McNear agreed to hold them for the plaintiff. The attorneys did not see

the cattle, and did not take actual possession of them. McNear left the farm a few days later, without the knowledge of the plaintiff, but told his brother, who succeeded him, that the cattle were to be held for the plaintiff. On the second day of August, the defendant Taylor, went to the Beck farm, took possession of the cattle in controversy, under the mortgage to the defendant bank, and drove them to Onawa. They were there taken by the plaintiff, on the next day, by virtue of the writ of replevin issued in this action, as already stated. The note and mortgage, under which the defendant bank claims, were made to the Union Trust Company, and the description of property contained in the mortgage was as follows: "Two hundred twenty-five (225) head of coming three and four-year old steers, said steers being now on section 23–82–45, W. 5th P. M., and section 19–82–44, W. 5th P. M., and to remain on above land until July 1st, 1893, and then to be kept on the N. E. $\frac{1}{4}$ and S. $\frac{1}{2}$, 9–83–46, W. 5th P. M., until the above debt is discharged." The land first described, except a part of section 19, is included in the Yeoman farm, and that last described is included in the Beck farm. Donaldson was secretary of the Union Trust Company. On the twelfth day of May he appeared at the place of business of the American National Bank, in Kansas City, Mo., with the note and mortgage given to the Union Trust Company, and delivered them to the bank, to be held as collateral security for drafts drawn by the Union Trust Company which it had taken. The trust company, at that time, had an office in Kansas City. Only a part of the drafts so taken have been paid, and the amount remaining due is much in excess of the value of the property in controversy.

It does not appear that the defendant bank had any knowledge of the claim of the plaintiff, when it received the note and mortgage of Zook from Donaldson.

The mortgage under which the plaintiff claims, was not recorded until the fifth day of July, 1893, long after the rights of the defendant bank accrued.

The mortgage to the plaintiff does not contain any provision making it cover property acquired after the date of its execution. The property mortgaged is described in express terms as being on the Beck farm, and owned by the mortgagor at the time the mortgage was given. It is the general rule that "a chattel mortgage will not be deemed to cover after-acquired property unless the intention that it should, is clearly expressed." *Lormer v. Allyn*, 64 Iowa, 726 (21 N. W. Rep. 149); 1 Cobbey, Chat. Mortg. section 356; Jones, Chat. Mortg. section 160 *et seq.* See, also, *Phillips v. Both*, 58 Iowa, 499 (12 N. W. Rep. 481); *McArthur v. Garman*, 71 Iowa, 34 (32 N. W. Rep. 14). As the mortgage to the plaintiff was given nearly two months before the mortgagor had acquired any interest in the steers, it did not include them. It may be that, if it was intended to have that effect, a court of equity would grant relief in a proper case; but in this action the rights of the plaintiff were limited by the terms of its mortgage. No attempt to correct it was made. It said the plaintiff was in actual possession of the steers when the defendants took them, but the district court was authorized to find that the possession taken was, at most, constructive, and not actual. The McNears, who, it is claimed, held possession for the plaintiff after the fifth day of July, 1893, were in the employment of Donaldson, and there was no apparent change in the possession. That was insufficient, as against the defendants. *Boothby v. Brown*, 40 Iowa, 104; *Sutton v. Ballou*, 46 Iowa, 517; *McKay v. Clapp*, 47 Iowa, 418; *Smith v. Champney*, 50 Iowa, 174; *Nuckolls v. Pence*, 52 Iowa, 581 (3 N. W. Rep. 631); Jones, Chat. Mortg. sections 181–183, 185–187; 1 Cobbey, Chat.

Mortg. section 497. There was evidence from which the district court might have found that Zook became the purchaser of the cattle, and we should not feel authorized to disturb a finding to that effect for lack of evidence to support it. We are inclined to think, however, that Zook acted throughout, for, and in the interest of Donaldson, and that the latter owned the steers, but, if he did, the mortgage held by the defendant bank should be sustained, for the reason that it was evidently given with the knowledge and assent of Donaldson. Zook was his business manager, intrusted with the care of his farms, and with power to buy and sell cattle for him. The mortgage recited that the mortgaged steers were to be kept, after July 1, 1893, on a farm owned by him. It does not appear that Zook owned any cattle, nor that he transacted business in his own name, unless he did so when the sale by Engle & Mustard was consummated. The mortgage to the Union Trust Company was negotiated, by Donaldson, at Kansas City, two days after it was given. The conclusion, from all the facts in evidence, is irresistible that, if Zook did not own the steers, Donaldson knew that the mortgage was on his own property, and that he ratified and approved what Zook had done, by negotiating the note and mortgage with knowledge of the facts. The mortgage was certainly effectual, as against both Zook and Donaldson. to vest in the defendant bank all the rights which either or both had to give. The mortgage recites that it is on the two hundred and twenty-five steers, instead of one hundred, and they were described as being on the Yeoman farm when the mortgage was given. The fact that the mortgage purported to include more cattle than there were on the farm did not affect its validity with respect to those which were actually placed there. *Kenyon v. Tramel*, 71

Iowa, 693 (28 N. W. Rep. 37). Nor do we think its validity was affected by the error in describing the place where the cattle were kept. Donaldson had contracted for them, and they were in fact placed on the Yeoman farm, where they were required to be kept until July, within a week after the mortgage was executed; and they were on the Beck farm, where they were required to be kept, after the first of July, when the plaintiff claims to have taken possession of them. No prejudice to it could have resulted from the error. The plaintiff must rely upon its own title, not upon a lack of title in the defendants; and it has failed to show any right to recover. The defendants were in the actual possession of the cattle when this action was commenced, and the district court was authorized to find that they rightfully held them, under a mortgage which was executed for sufficient consideration, and gave to them the right of possession.

II.    The plaintiff attempted to show, by a witness named Eldridge, what he heard Zook say with reference to the note and mortgage he had given; but the court sustained objections to the testimony, and of that ruling the plaintiff complains. Zook was not a party to the action, no reason is shown for not taking his testimony in one of the methods provided by the statute, and no facts appear to make his declarations competent evidence. We do not think there was any error in the ruling. The judgment of the district court seems to be right, and it is AFFIRMED.