WERTHEIMER & DEGEN, Appellants, v. WILLIAM SHULTICE, Appellee.

**CHATTEL MORTGAGES:** Recording—Law Governing. A chattel mortgage executed and delivered in a foreign state on property there situated will be governed by the recording laws of this state when the parties mutually contemplate the immediate transfer of the property to this state to the domicile of the mortgagor, under a lien good under the laws of this state.

**CHATTEL MORTGAGES:** Requisites and Validity—Erroneous Description—Effect. An erroneous statement in a chattel mortgage as to the *location* of the property is not necessarily fatal. The description may be such, notwithstanding the erroneous statement, as to generate a jury question as to whether the property could have been identified from the entire description contained in the mortgage.

EVANS and FAVILLE, JJ., dissent, on the facts of the instant case.

**CHATTEL MORTGAGES:** Recording—Sub-purchaser as Subsequent Purchaser. The third purchaser of mortgaged chattels does not

establish the status of "subsequent purchaser," within the mean-
ing of the recording statute (Sec. 10015, Code of 1924), unless he
shows that his immediate vendor purchased of the mortgagor.

Headnote 1:   11 C. J. p. 426 (Anno.)   Headnote 2:   11 C. J. pp. 465,
472.   Headnote 3:   11 C. J. p. 518.

Headnote 1:   35 L. R. A. (N.S.) 385; 5 R. C. L. 987.   Headnote 2:
5 R. C. L. 424.

*Appeal from Marshall District Court.*—B. F. CUMMINGS, Judge.

### DECEMBER 16, 1926.

Replevin by mortgagee against subsequent purchaser of cat-
tle.  From judgment on directed verdict in favor of the defend-
ant, the plaintiffs appeal.—*Reversed.*

*H. C. Monsky, F. E. Northup,* and *J. G. Cooper,* for appel-
lants.

*E. N. Farber* and *George D. McIlrath,* for appellee.

MORLING, J.—I.   The original petition alleged that the
plaintiffs were copartners.   An amendment to the petition
charged collusion to defraud.   A substituted petition alleged
that the defendant was a corporation.   Because of these matters,
defendant says that plaintiffs are not the real parties in interest,
and have abandoned their rights under the mortgage.   These
claims are without merit.

II.   Defendant claims that the mortgage was executed in
Nebraska, and that its validity must be determined by the laws
of Nebraska.  He pleads, but has not proved, a Nebraska statute
declaring every mortgage not followed by change of possession
to be absolutely void, as against subsequent
purchasers in good faith, unless filed as therein
required.   The statute as pleaded has no refer-
ence to the rights of the mortgagor and mortgagee as between
themselves, but to those of third persons subsequently dealing
with the mortgagor (and to creditors).   The property was sold
for removal to, and possession and enjoyment by the mortgagor
in, Tama County, Iowa, where the mortgagor had his domicile.
Possible subsequent dealings in Iowa concerning the property

1. CHATTEL MORT-
GAGES: record-
ing: law gov-
erning.

while there, and with the owner living there, were in the contemplation of the parties. The intention was to create and preserve a lien that would be good under the laws of Iowa. The dealings under consideration had no reference to the Nebraska laws. We think the case is governed by the recording laws of Iowa, and not those of Nebraska. *Flora v. Julesburg Motor Co.,* 69 Colo. 238 (193 Pac. 545) ; *Stitt v. Spengel House F. Co.,* 58 Colo. 559 (146 Pac. 770) ; *Grady Trading Co. v. Ireland,* 29 Ga. App. 172 (114 S. E. 86) ; 11 Corpus Juris 531 ; 12 Corpus Juris 450. See *Union Sec. Co. v. Adams,* 33 Wyo. 45 (236 Pac. 513).

III. The description of the mortgaged property is as follows:

"The following described live stock and chattels, to wit:

"Thirty-six (36) head of 2-year-old dehorned Whiteface and Shorthorn steers average weight about 768 pounds all branded 'S' called Wiggling S back of the left shoulder also one thousand (1,000) bushels of corn to be fed the above cattle they being all of this description now owned or controlled by me and are to be kept on good and sufficient feed and sustenance during the life of this mortgage on my place located about 3 miles south of Garland, Iowa, in Tama County, the above-mentioned cattle being free of all incumbrance, and all natural increase of said live stock.

2. CHATTEL MORT- GAGES: requisites and validity: erroneous description: effect.

"The above described live stock being all of the kind now owned by me, and are in my undisputed possession, free from all liens and incumbrances, and kept on my premises on Section No. as above in Township No. ——, Range No. ——, in Tama County, Iowa, being the live stock purchased this 21st day of March, A. D. 1923, of Wertheimer & Degen."

The mortgagor agreed to "at once put" them on full feed.

Weise, the mortgagor, resided in Tama County, Iowa, and purchased the cattle from the mortgagees at Omaha, where they were at the time, and signed the note and mortgage there. The mortgage is dated and acknowledged March 21, 1923. The mortgage was recorded in Tama County, March 22, 1923. The cattle were shipped to Weise at Montour in Tama County, and arrived there March 23, 1923. Weise did not receipt for them to the railroad company. They were reshipped the same date to Plumb Brothers at Marshalltown. The evidence tends to show that

Weise sold them to Plumb, and McIlrath sold them to defendant on April 1, 1923. The only evidence on the subject of whether Plumb sold these cattle to McIlrath is McIlrath's evidence:

"I don't know whether I sold him [defendant] cattle that I obtained from Plumb Brothers or not. I bought some cattle from Plumb Brothers prior to the sale to William Shultice. * * * The cattle I sold Shultice might have been obtained from Plumb Brothers."

Plaintiffs replevined the cattle October 4, 1923, in Marshall County. There is no town of Garland in Tama County. Weise lived three miles south of Garwin, in Tama County. There is evidence that defendant's purchase from McIlrath was for cash. No question of the burden of proof is raised, nor that the description is insufficient as between the parties. *Kusser v. Sioux City H. & M. Co.,* 199 Iowa 200.

It must be held, upon the evidence, that Weise was the owner of the cattle. Delivery to the railroad company was delivery to him. He was the owner, and in possession. The mortgage to the plaintiffs was good as against Weise and against trespassers and against purchasers from Weise with notice. The defendant can claim no benefit under the recording law, unless he shows that he is a purchaser or subpurchaser from Weise. It is only as "against existing creditors or subsequent purchasers without notice" that an unrecorded mortgage is invalid for want of record. Section 10015, Code of 1924. Unless the cattle in question were sold by Plumb to McIlrath, McIlrath obtained no title, and conveyed none to defendant, and he has no standing to contest the mortgage for want of record. *Elliott v. Washington,* 137 Mo. App. 526 (119 S. W. 42); *Nussbaum v. Waterman & Co.,* 9 Ga. App. 56 (70 S. E. 259); *Couch v. Holmes,* 151 Ala. 503 (43 So. 858). The evidence does not show that McIlrath, and therefore defendant, did acquire his claim of title to the cattle through Plumb and Weise, and therefore defendant was not in position to invoke the recording law and to have a verdict directed in his favor.

*3. CHATTEL MORTGAGES: recording: sub-purchaser as subsequent purchaser.*

We are of the opinion further that the question of identity of the cattle and of the sufficiency of the description was for the jury, and not for the court, to determine. The plaintiffs had the right to sell the cattle to Weise at Omaha and to take back a

chattel mortgage upon them for the purchase price. Except for the recording law, they were under no duty to give notice of their lien.

"Lord Kames * * * observes that, when notions of property were slight, a bona-fide purchase of stolen goods gave a good title against the original owner; but that, in the progress of society, property acquired such stability and energy as to affect the subject wherever found, and to exclude even an honest purchaser, when the title of his vendor was discovered to be defective. It was also a principle in the English common law that a sale out of market-overt did not change the property against the rightful owner; * * * I know of no usage or regulation within this state, no Saxon institution of markets-overt, which controls or interferes with the application of the common law. * * * The purchase by the defendants did not, therefore, of itself, and without reference to the title of the vendor, give them an indefeasible right to the goods in question." Per Chief Justice Kent in *Wheelwright v. Depeyster*, 1 Johns. (N. Y.) 471, 478 (3 Am. Dec. 345, 347).

The defendant is in no better position than he would have been if the sale by plaintiffs to Weise had been made at the stockyards at Montour, instead of at the stockyards in Omaha, and if the agreement to keep the cattle on good and sufficient feed on Weise's place in Tama County had been made at Montour, instead of at Omaha. In either case, the recording law required the mortgage to be recorded only in the county of the residence of the mortgagor. If the mortgage was sufficient in contents and execution, and recorded in the county of Weise's residence, it is immaterial that the defendant did not know that Weise was a prior owner of the cattle. He must deraign his title through Weise, and he is affected with notice of the instrument executed by Weise, properly recorded in the county of Weise's residence. Except for the statute, no notice would be required. The statute does not require actual notice. It requires only constructive notice by recording. It is said in *Thomas v. Kennedy*, 24 Iowa 397, 407:

"* * * the true doctrine is that the purchaser is bound to know or take notice of the condition of the record title, up to the time of the sale. And if actual notice, on the day and at the time of sale, would have affected him, the same is true of instru-

ments filed for record, and which become by that act constructive notice.''

In *Keefe v. Cropper,* 196 Iowa 1179, 1183, it is said:

''Did the recorded mortgage put the purchaser on inquiry? If a person is put on inquiry, he is bound to investigate. In law, he knows all that he could ascertain by an inquiry. An execution purchaser is put on inquiry by an instrument properly indexed and recorded, by the recitals or matters therein that would put a reasonable person upon inquiry, and he is bound to take notice of all facts that he might have learned by pursuing the path thus indicated. *Thomas v. Kennedy,* 24 Iowa 397; *Loser v. Plainfield Sav. Bank,* 149 Iowa 672.''

In *Loser v. Plainfield Sav. Bank,* 149 Iowa 672, 676, it is said:

''It may, however, be taken as well settled that an instrument properly made of record is notice to the world not only of the facts and claims therein expressly set forth, but also of all other material facts which an inquiry thereby reasonably suggested would have developed, and that such notice is not affected or avoided by variations in names which do not mislead a subsequent purchaser or are of such character as ought not to mislead a purchaser of ordinary prudence and intelligence. * * * 'A purchaser is charged with notice of every fact shown by the records, and is presumed to know every other fact which examination suggested by the record would have disclosed.' * * * 'Whatever is sufficient to put a purchaser on a chain of inquiry is sufficient to charge him with whatever an ordinary diligent search would have disclosed.' ''

In 2 Pomeroy's Equity Jurisprudence (4th Ed.), Section 594, it is said:

'' * * * notice may, I think, be correctly defined as the *information concerning a fact* actually communicated to a party by an authorized person, or actually derived by him from a proper source, or else presumed by law to have been acquired by him, which information is regarded as equivalent *in its legal effects* to full knowledge of the fact, and to which the law attributes the same consequences as would be imputed to knowledge. * * * Although an actual knowledge is not necessarily assumed to result, yet, in many instances, as will be seen, the party is not permitted to show this fact, but the same consequences follow

with respect to his rights and interests as though he had obtained real knowledge. * * * Notice is either actual or constructive; but the legal effect of each kind, when established, is exactly the same.''

In *Grandison v. National Bank,* 145 C. C. A. 620, 629 (231 Fed. 800, 809), quoting from *Coder v. McPherson,* 82 C. C. A. 99 (152 Fed. 951), it is said:

'' 'Notice of facts which would incite a man of ordinary prudence to an inquiry under similar circumstances is notice of all the facts which a reasonably diligent inquiry would disclose.' * * * No principle of law is better settled or more universally accepted.''

The rule governing the sufficiency of the description in a chattel mortgage laid down in *Smith & Co. v. McLean,* 24 Iowa 322, 332, and later cases, is:

''That description which will enable third persons, *aided by inquiries* which the instrument itself indicates and directs, to identify the property * * *.''

Defendant's contention is that he had the right to rely upon every statement in the description; that ''a misstatement in an essential element of the description that is misleading or confusing is always fatal. * * * The chattel mortgage definitely stated that the cattle were then located on a certain farm. That was where it stated they could be found. The cattle levied upon not only were not on that farm at that time, but they never were there. * * * The property levied upon never was in 'the undisputed possession, free from all liens and incumbrances,' of Mr. Weise. * * * He never for one moment ever had any such possession. * * * while the cattle were in the hands of the railroad company, the said company had a lien upon them for their freight, and the shippers at any rate had the right to stop the shipment in transit for any good cause. * * * If we take out of the description what they concede to be misdescriptions as to the cattle levied upon, then the mortgage is entirely insufficient. It would be absolutely impossible for anyone to locate the cattle from anything remaining.''

The description gives the age, breed, sex, average weight, and brand of the cattle, and states that they were dehorned. This, of course, while correct as far as it goes, would not be sufficient: but the entire description must be considered. *Packers*

*Nat. Bank v. Chicago, M. & St. P. R. Co.,* 114 Iowa 621. Errors in description are not necessarily fatal.

"The correct part of the description in this mortgage· is sufficient, and, even without the actual notice had by the plaintiff, the false part of the statement will be rejected, and the mortgage held good." *Frick v. Fritz,* 115 Iowa 438, 445.

See, also, *King v. Howell,* 94 Iowa 208; *Jones v. Workman,* 65 Wis. 269 (27 N. W. 158). Erroneous location may be rejected as surplusage. *Idem.; Spaulding v. Mozier,* 57 Ill. 148; 11 Corpus Juris 465, and cases post. If the description is misleading, the record is not notice. *Packers Nat. Bank v. Chicago, M. & St. P. R. Co.,* 114 Iowa 621, and cases below. The description in the mortgage on its face is sufficient in law. Whether, on the facts, it is sufficient to put the purchaser on inquiry may, in the further progress of the case, be a question for the jury. *Livingston v. Stevens,* 122 Iowa 62; *Packers Nat. Bank v. Chicago, M. & St. P. R. Co.,* 114 Iowa 621; *Frick v. Fritz,* 115 Iowa 438; *Peterson v. Foli,* 67 Iowa 402. The question here is whether the cattle could have been identified from the description contained in the mortgage, and that, we think, on the record, is a question of fact. *Idem.; Peterson v. Foli,* 67 Iowa 402; *Nussbaum v. Waterman & Co.,* 9 Ga. App. 56 (70 S. E. 259). The mortgage bears at the head the words, "The Stock Yards National Bank, South Omaha, Nebraska." The mortgagor is stated to be Fred Weise, of Tama County, Iowa. The instrument provides for taking possession by the mortgagee if the mortgagor attempts to remove the property from Tama County, and for foreclosure sale in Tama County, Iowa, or South Omaha, Nebraska. It recites that the cattle are "the live stock purchased this 21st day of March, A. D. 1923, of Wertheimer & Degen." The mortgage covers not merely the cattle, but 1,000 bushels of corn, "to be fed the above cattle." The mortgage states that:

"The cattle are to be kept on good and sufficient feed and sustenance during the life of this mortgage on my place located about 3 miles south of Garland, Iowa, in Tama County."

This is, on its face, promissory and prospective, and not a statement of the existing location of the cattle. We think that the jury would be warranted in holding, on these statements, that one examining the record would be put upon notice that the cattle were purchased at the date of the mortgage, to be taken to

Weise's place and there fed, and that they were not on Weise's place when purchased and mortgaged back. The cattle purchased by defendant conformed to the specific description thus given. They were the cattle purchased of the plaintiff. They were the only cattle that Weise had, conforming to that description. While the statement of location is important, it is not essential; and, if the property is otherwise sufficiently described, the location may be omitted, or, if erroneously given, may be rejected as surplusage. Cases above and below cited; *King v. Howell*, 94 Iowa 208; *Wells v. Wilcox*, 68 Iowa 708; *Brock v. Barr*, 70 Iowa 399; *State Bank of Dayton v. Felt*, 99 Iowa 532; *Shellhammer v. Jones*, 87 Iowa 520; 5 Ruling Case Law 424; 11 Corpus Juris 465, 468, *et seq; Adams v. Hill & George*, 10 Kans. 627; *Crescent Coal & M. Co. v. Raymond*, 57 Ill. App. 197; *City Nat. Bank v. Goodloe-McClelland Com. Co.*, 93 Mo. App. 123. The defendant's contention reduces itself to the claim that the naming of the town ''Garland,'' instead of ''Garwin,'' and the statement ''above-described live stock * * * are in my undisputed possession free from all liens and incumbrances and kept on my premises,'' etc., are, as matter of law, misleading.

It is a matter of public knowledge that there is no town of ''Garland'' in Tama County, and that there is a town of ''Garwin'' there. If the location had been ''my place located in Tama County,'' we think that, on that point, no question of its sufficiency would be raised. The property was delivered to Weise, and was in his possession when it was delivered to the railroad company. The statement that it was free of incumbrance would not mislead the searcher, nor was it incorrect at the time the mortgage was signed, nor did the description become misleading or substantially incorrect from the fact that the railroad company might have acquired a lien for carrying charges. The first paragraph of the description states that the cattle, being all of this description then owned by him, ''are to be kept on good and sufficient feed * * * on my place.'' A following and separate paragraph states:

''The above described live stock being all of the kind now owned by me and are in my undisputed possession * * * and kept on my premises on Section No. as above, in Township No. ——, Range No. ——.''

The section, township, and range numbers are not filled

out. The paragraph states that the cattle are owned by Weise, and are all of the kind owned by him; that they are in his possession; that they are kept on his premises "as above;" and that they are the live stock purchased that day of the mortgagees. We are of the opinion that the jury might say that the searcher might readily conclude that this paragraph was merely a form, which had not been filled, and which, taken together with the preceding paragraph, showed, not that the cattle were then on a place not described, but that they were to be kept on the mortgagor's place; and that he would be in no wise misled by the apparent conflict in the mere grammatical tense.

It does not seem to be seriously disputed that, if the cattle had been, for however brief a time, and whether at noon or midnight, on Weise's place, the description would have been fulfilled. If the cattle had been unloaded at night at Montour, and driven by way of Weise's farm, and kept there long enough to be fed and watered, and driven on to Marshalltown, the description would have technically fulfilled the demand of defendant's contention. The inquirer would not be assisted by the temporary presence of the cattle on Weise's place, nor would his search or inquiry have been abbreviated thereby. To sum up, the description contained the following particulars: (1) The physical details of age, breed, average weight, brand, sex, and dehorning of the cattle. (2) Date of purchase and name of seller. (3) That they were bought to be fed,—i. e., feeders. (4) That they were owned and controlled by Weise, and were in his possession. (5) That they were bought to be kept and fed on Weise's place. (6) That they were all of that description owned or controlled by Weise. In these details, the description was correct. A purchaser from Weise would surely be put upon inquiry, and inquiry would have developed these facts and identified the cattle. The statement that Weise's place was south of Garland, instead of Garwin, and that, in an unfilled and incomplete paragraph, it was stated that they were "kept" on Weise's premises, it seems to us the jury might well say could not have misled. We are of the opinion that the instrument cannot be held, as matter of law, to have been calculated to puzzle and mislead the searcher, and that the case should have been submitted to the jury. In addition to the authorities cited, see *Chattanooga St. Bank v. Citizens' St. Bank*, 39 Okla. 255 (134 Pac. 954) ; *Central Nat. Bank*

*v. Brecheisen,* 65 Kan. 807 (70 Pac. 895); *Trower Bros. Co. v. Hamilton,* 179 Mo. 205 (77 S. W. 1081); *Iowa St. Nat. Bank v. Taylor,* 98 Iowa 631; *Hayes v. First St. Bank,* 5 Neb. Unof. 298 (98 N. W. 423); *Joslyn v. Moose River Lbr. Co.,* 83 Vt. 49 (74 Atl. 385).

No estoppel or fraud is proven. We are not anticipating what the plaintiffs or the defendant may show on a full and more formal hearing.

The judgment is—*Reversed.*

DE GRAFF, C. J., and STEVENS, VERMILION, and ALBERT, JJ., concur.

EVANS and FAVILLE, JJ., dissent.

EVANS, J. (dissenting).—The serious question in the case is whether the description contained in the mortgage is such that the record thereof imparted constructive notice to an innocent purchaser. The plaintiffs do not contend that the defendant had actual notice of their mortgage. They do contend that the recording of their mortgage in Tama County operated as constructive notice to all persons. The mortgage described the cattle both "as kept" and "to be kept" upon the farm of the mortgagor, three miles south of Garland, in Tama County, Iowa. The mortgagor was the owner of a farm three miles south of *Garwin,* in Tama County, Iowa. There was no "Garland" in Tama County. I disregard this error in the mortgage, for the purpose of this dissent. The description in the mortgage became misleading at this point, and in that sense became a *misdescription,* because at no time were these cattle ever on the mortgagor's farm. When this mortgage is read in the light of the circumstances and after events, it is quite evident that the mortgage was not intended, between the parties thereto, to become effective as to third parties, until the description contained in the mortgage should be rendered true and correct by the transportation of the cattle to the mortgagor's farm. The mortgage was actually made in Omaha. The description written into it was intended to be fulfilled by a transportation of the cattle to such farm. If that purpose had been carried out, then the cattle in such location would fulfill the description in the mortgage. The cattle were shipped over the Chicago & Northwestern Railway,

and were delivered to Plumb Bros., at Marshalltown, in Marshall County. Before such delivery, however, they had been carried as far as Montour, in Tama County, and from there back to Marshalltown, without previous unloading or delivery to any one. Plaintiff's mortgage was recorded in Tama County at 1 P. M., March 22d. The car of cattle reached Montour at midnight of the same day. The argument for the appellants is that the recording of the mortgage became effective as constructive notice, the moment that the car of cattle reached Tama County. It does not contend that constructive notice was imparted at any prior time. The argument of the majority opinion is, in substance, that, if the alleged innocent purchaser had gone to the farm of the mortgagor in Tama County, he could have ascertained all the facts pertaining to this shipment. I submit that the effect of this argument is to make a *misdescription* in a mortgage as effective for the purpose of constructive notice as a correct description. If the defendant purchaser had had actual notice sufficient to put him upon inquiry, then the argument of the majority would be pertinent at this point. The distinction between the duty of inquiry which is cast upon one having actual notice, and the legal presumption raised as against one having only constructive notice, is recognized and illustrated in many of our cases. *Plano Mfg. Co. v. Griffith*, 75 Iowa 102; *Coleman v. Reel*, 75 Iowa 304; *American Well Works v. Whinery*, 76 Iowa 400; *Cole v. Green*, 77 Iowa 307; *Luce v. Moorehead*, 77 Iowa 367; *Citizens' Nat. Bank v. Johnson*, 79 Iowa 290.

I submit that, where the description in a recorded mortgage is affirmatively misleading, and amounts thereby to what we have heretofore termed a "misdescription," no duty of discovery is cast upon an innocent purchaser, who is charged only with constructive notice. Such a purchaser is not charged with constructive notice of any material mistake or *misdescription* in the mortgage. He is not chargeable as to any property which is outside of the terms of the mortgage, even though its exclusion were the result of mistake.

We have heretofore adopted a liberal rule in sustaining broad and general description of chattels in a mortgage, without requiring specific description of each separate chattel. We have been able, however, to adopt and sustain such liberal rule by laying stress upon the descriptive value of *possession* and *loca-*

*tion* of the mortgaged chattels. If, in this case, we may treat as immaterial the statements of the mortgage as to *possession* and *location,* we almost dispense with the necessity of description at all. If it be assumed, however, that, if the *misdescription* be disregarded, then sufficient remains, independent thereof, to describe the cattle, this does not solve our problem. We have no right to treat a *misdescription* as surplusage, and thereby to charge an innocent purchaser with constructive notice of a fact which was completely contradicted by the *misdescription* thus ignored. I submit, therefore, that, as between the mortgagee and the innocent purchaser, the *misdescription* in his mortgage becomes a verity, as against the mortgagee, and that he may not correct his mistake at the expense of the innocent purchaser.

The distinction between a merely *defective* description and a *misdescription* has been recognized in our cases many times. A few excerpts from our cases will show that we have had this question before us repeatedly. In *Ivins v. Hines,* 45 Iowa 73, we said:

"The mortgage under which intervener claims described the cows intended to be included in it as 'branded with a star on right horn.' The cattle turned out to plaintiff were not so branded. * * * The chattel mortgage in question, instead of indicating or suggesting inquiry, was calculated to suppress all inquiry. It contained a specific designation of the property included within it, 'fourteen cows, branded with a star on right horn.' When the property was offered to plaintiff containing no such brand, he certainly had a right to conclude that the mortgage did not refer to it."

In *Packers Nat. Bank v. Chicago, M. & St. P. R. Co.,* 122 Iowa 503, we said:

"The description in the mortgage was not simply indefinite or uncertain as to the brand, but it was positively misleading. * * * Under these circumstances, the mortgage was not constructive notice to the purchaser as to these animals, and the trial court was warranted in instructing the jury to return a verdict for defendants."

The mortgage in the foregoing case misdescribed a brand. In *Lee County Sav. Bank v. Snodgrass Bros.,* 182 Iowa 1387, the mortgage described the mortgaged cattle as located on a certain farm. In that case, we said, in substance, that a chattel mort-

gage which distinctly describes the mortgaged property as located on a specifically described farm, without other recitals in the mortgage suggesting further inquiry, and without other suggestive knowledge on the part of the searcher, is not notice to one who actually reads the mortgage, that the mortgaged property is, in reality, situated on another separate and distinct farm belonging to the mortgagor and located in the same township, and that:

"The debtor could have property which was never on the place described in the mortgage. And a description which declares, without anything more that is a tangible aid to identification, that the property is on one farm, gives no notice that it covers property on a different farm. The appellees knew there was a mortgage, but that knowledge adds nothing to the mortgage."

In *Adams v. Commercial Nat. Bank*, 53 Iowa 491, the mortgage misdescribed the location of the mortgaged property. We said:

"Conceding the bank had notice of the mortgage and its contents, it clearly appeared from such description that the wheat mortgaged was not that in controversy. Not because it was not sufficiently described, but because of elements of description essentially different from the property in controversy. * * * This is not a case of imperfect or insufficient description of personal property, but just the reverse."

The same question was involved in *Farmers' & Merch. Bank v. Stockdale*, 121 Iowa 748. The mortgaged property involved therein was described as being in Section 29, whereas, in fact, the farm was in Section 20. The court said:

"The third mortgage, it may be conceded for the purposes of this case, contains a sufficient description of the property in the section and township named. But the property here in question, in point of fact, was in Section 20, and, if it is to be said that the record of the mortgage imparted notice that such was included in the conveyance, it must be because the provision 'and in other places in said county' affords a sufficient description as to the location thereof. We have held repeatedly that the description of property in a chattel mortgage, to be sufficient as against third persons having constructive notice only, must be such as that the property can be identified by reference to the

instrument itself, aided by such inquiries as may be indicated or directed thereby. * * * The corollary follows that the description in a mortgage which does not thus afford means of identification must be held to be insufficient. There should be a designation of the property conveyed, and of the place where it may be found. Not that it is necessary in all cases to describe each article in detail, but the description should be sufficiently specific to enable a third person to go to the place indicated and set the property apart. * * * It is not a sufficient location of property to say that it is in a county named.''

It is not a proper answer to say that the innocent purchaser should have inquired of Weise, and that he should be charged with constructive notice of all that such inquiry might have disclosed. To say that the recorded instrument in Tama County charged the subsequent purchaser with a duty to search out the mortgagor and to make inquiry of him, would be to say that the disclosure of the name of the mortgagor in a recorded instrument is of itself sufficient to cure all errors of description, in that full information of facts could always be had by inquiry from the mortgagor. The name of the mortgagor necessarily appears on all mortgages. If, therefore, the disclosure of the name of the mortgagor is sufficient to charge the subsequent purchaser with the duty of inquiry of the mortgagor, and to charge him with constructive notice of the facts which such an inquiry would reveal, even though they be contradictory to the terms of the mortgage itself, then the duty and burden of a good description of the mortgaged chattels would be wholly lifted from the shoulders of the mortgagee, and transferred to the shoulders of the innocent purchaser. No chattel mortgage could fail to operate as constructive notice, regardless of all mistakes or *misdescription*. Such is not the law.

If the defendant is to be held chargeable, it is not because of any actual notice or any bad faith or want of diligence on his part, but because, as a matter of law, he was bound to take notice at his peril of what was disclosed by the chattel mortgage record. He was not chargeable with any mistakes or *misdescription* in the recorded instrument, nor was he chargeable with a duty of discovery of such mistakes or *misdescription*. If liability were predicated upon actual notice and want of diligence in inquiry, a different question would be presented. Evidence of actual no-

tice challenges the diligence and good faith of the subsequent purchaser. But constructive notice is a creature of the statute, and is predicated strictly upon the terms of the recorded instrument itself.

I would affirm the judgment below.

Justice Faville joins in this dissent.