## LINCOLN NATIONAL BANK & TRUST COMPANY OF FORT WAYNE *v.* PARKER.

[No. 16,492. Filed May 26, 1941. Rehearing denied October 23, 1941. Transfer denied November 28, 1941.]

4

*Gates & Gates,* of Columbia City, and *Otto E. Grant, Sr.,* of Fort Wayne, for appellant.

*Rex S. Emerick,* of Kendallville, and *Claud V. Barker,* of Albion, for appellee.

BEDWELL, J.—The appellant, Lincoln National Bank and Trust Company of Fort Wayne, filed an action to replevy twenty-four (24) Hereford heifers, alleged to be the property of appellant and located on a farm owned by the appellee, Warren E. Parker. The issues were made by an answer of general denial to appellant's complaint. The issues were submitted to a jury which returned a verdict in favor of the appellee; and appellant, on appeal, is relying upon alleged error of the court below in overruling its oral motion to instruct the jury to return a verdict for it and in overruling its motion for a new trial.

On November 7, 1938, one Joy Smith of Allen County, Indiana, purchased of the E & M Cattle Company of Whitley County, Indiana, sixty (60) Hereford heifers, and to secure the purchase price thereof, evidenced by a promissory note, executed to the seller a chattel mortgage thereon. In such chattel mortgage the property was described as follows:

"60 Hereford Heifers Branded—L
"Cattle located in Allen County, Lake Twp. 5 miles South Churubusco, Ind. on the Hildebrandt Road."

On November 9, 1938, such chattel mortgage was duly assigned to appellant and was then duly recorded in Allen County, Indiana, the county where the mortgagor resided and the county where the mortgaged property was then located. At the time of the purchase of the cattle and the execution of the note and mortgage therefor, the cattle were located at the farm of E & M Cattle Company in Whitley County, Indiana, but immediately thereafter they were moved to the farm of the mortgagor in Allen County, Indiana.

On November 23, 1938, appellee purchased twenty-four (24) head of heifers, at public auction held at a sale barn in Ligonier, Indiana, and on April 29, 1939, appellant demanded the possession of the twenty-four (24) heifers, so purchased by appellee, as a part of the property covered by its chattel mortgage. A writ of replevin was issued on April 29 and seventeen (17) heifers, found in barn of appellee, were seized by the sheriff on such writ.

During the trial one question of fact for determination by the jury was whether the twenty-four (24) heifers, purchased by appellee, were the identical cattle covered by the chattel mortgage assigned to appellant, and appellant is contending that the evidence is without dispute concerning this issue and that the trial court erred in overruling its motion to instruct the jury to return a verdict for it.

The rules by which we are governed in a determination of this issue, are clearly laid down in the case of *Haughton* v. *Aetna Life Insurance Co.* (1905), 165 Ind. 32, 39, 73 N. E. 592, 74 N. E. 613, where the court says:

"The Constitution of this state (Art. 1, § 20) provides: 'In all civil cases, the right of trial by jury shall remain inviolate.' Courts have guarded this right, with scrupulous care, against any encroachment. In all cases triable by jury the jurors are the sole and exclusive judges of the facts proved, and, of necessity, therefore, of the credibility of witnesses, and of the weight to be given to their testimony.

"Where upon a material point there is a failure of proof in the evidence of the party having the burden of an issue, the court may, as a matter of law, instruct the jury in favor of the other party to such issue. Where the facts are admitted by the pleadings or otherwise, or where the evidence upon the controlling question is documentary, and its interpretation and construction a matter for

the court, and but one conclusion reasonably deducible therefrom, then in such cases the court may, as a matter of law, direct a verdict in accordance with the evident facts, and in favor of the party having the affirmative of the issue.

"But where a determination of the issue involves the credibility of witnesses, and rests upon inferences and deductions to be drawn from facts proved, it will be an invasion of the province of the jury for the court to direct a verdict."

See, also *Mesel* v. *Farmers' etc., Bank* (1932), 95 Ind. App. 33, 43, 178 N. E. 305; *State* v. *Kubiak* (1936), 210 Ind. 479, 481, 4 N. E. (2d) 193.

In considering a motion for such instruction, the court is bound to accept as true all facts the evidence tends to prove and all inferences reasonably deducible therefrom against the party so moving. *Farmers Nat. Bank* v. *Coyner* (1909), 44 Ind. App. 335, 339, 88 N. E. 856.

Time and again this court and the Supreme Court of this State have determined that they will not weigh conflicting evidence on appeal, nor will they determine the credibility of witnesses. The only circumstance under which this court, on appeal, will weigh evidence of any character is where it can be placed in as favorable a situation as the trial court to correctly weigh it. *State ex rel.* v. *Davisson* (1910), 174 Ind. 705, 93 N. E. 6. When this court says that it will not weigh evidence or determine the credibility of witnesses, it does not mean, only, that it will not weigh the testimony of one witness as against the conflicting testimony of another witness. It also means that it will not weigh one portion of the testimony of a witness as against another portion of conflicting testimony of the same witness. If a particular witness, while testifying, makes assertions that are contra-

dictory, this court, on appeal, will not determine which of the assertions are true. The trial court or the jury trying the cause are in a different situation. They observe the witnesses when they testify, and it is within their province to determine what assertions made by a particular witness are true and what assertions made by the same witness are untrue. *Fitch* v. *Ingalls* (1930), 271 Mass. 121, 170 N. E. 833.

The appellant in this cause is contending that if we take the testimony as a whole, it will show conclusively that the twenty-four (24) head of cattle purchased by appellee were the same cattle that were covered by the chattel mortgage of appellant. At the same time, appellant complains because appellee, by taking isolated statements of witnesses, instead of the testimony of such witnesses as a whole, argued, successfully, to the jury and the court below that the cattle purchased by appellee were not the same cattle that were described in its chattel mortgage. In other words, appellant is asserting that if you take isolated statements of a witness and reject other testimony of the same witness, that there is testimony in the record which would tend to show that the cattle purchased by appellee were not the same cattle described in the chattel mortgage; but that if you take all of the testimony of all of the witnesses and weigh the isolated statements along with other testimony of the same witnesses, that the testimony, as a whole, will show conclusively that the cattle purchased by appellee were identical with the cattle described in the chattel mortgage.

But this court, in deciding whether the trial court erred in overruling the motion for a directed verdict, and in deciding the sufficiency of the evidence to sustain the verdict, does not consider the

evidence as a whole. Judge Lairy, in the case of *Monfort* v. *Indianapolis etc., Traction Co.* (1920), 189 Ind. 683, 686, 128 N. E. 842, has well stated the applicable rule in a case where the trial court directed a verdict in favor of the defendant, in the following language:

> "In sustaining that motion the court held that there was entire absence of any evidence to support some one or more of the facts essentially necessary to uphold a verdict in favor of appellant. In deciding the question so presented, the trial court was required to consider only the evidence most favorable to the plaintiff, excluding all conflicting evidence favorable to the defendant. All facts supported by such evidence, as well as all facts which can be rightly and reasonably inferred therefrom, must be regarded by the court as proved in passing on the motion to direct a verdict."

And, further:

> "The same rules apply when the question arises on a motion to direct a verdict."

And, further:

> "The same rules also apply when the sufficiency of the evidence to sustain a verdict is presented on appeal."

When we consider the evidence most favorable to the appellee and exclude all conflicting evidence favorable to the appellant, we find that there is evidence in the record which would prove that the cattle purchased by appellee were not the identical cattle that were covered by the chattel mortgage of appellant.

It is plain that appellant is seeking to have this court weigh the evidence and to determine whether the effect of evidence favorable to the appellee is overcome by evidence favorable to the appellant.

But the identity of the mortgaged property was not the only question of fact before the jury for determination. There was also the question of whether appellee

was a purchaser with actual or constructive notice of appellant's mortgage. While it is true that the trial court, by giving to the jury instruction No. 4, tendered by the appellant, instructed the jury that the description in the chattel mortgage would enable third persons, aided by inquiry which the instrument itself indicated or suggested, to identify the mortgaged property, when we consider this instruction along with other instructions given by the court, we do not believe that the effect or purpose of the court's instructions, taken as a whole, was to eliminate consideration by the jury of the question, of whether the description in the chattel mortgage was sufficient, when aided by inquiry suggested and directed by the mortgage itself and information gained by such inquiry, to lead to a discovery of the property covered by appellant's mortgage. If the jury determined, as a fact, that the appellee could not identify the mortgaged property from the description contained in the mortgage, aided by inquiry suggested and directed by the mortgage itself and information gained by such inquiry, such determination would be sustained by evidence. The mortgage described the cattle as "Branded—L," while the cattle purchased by appellee were not "Branded—L."

While the sufficiency of the description contained in a chattel mortgage is a question of law, yet, if reasonable men could draw different conclusions from the evidence, the identity of the property is one of fact. Where extrinsic evidence is adduced to identify the property and such extrinsic evidence shows a misdescription rather than an insufficient one, the jury may determine whether or not it is sufficient, notwithstanding the false recitals, to put a third person on sufficient inquiry to lead to a discovery of the property covered by the mortgage. 11 C. J. § 103, p. 472;

14 C. J. S. § 71, p. 684; *Wertheimer & Degen* v. *Shultice* (1926), 202 Iowa 1140, 1147, 211 N. W. 568, 572; *Central Savings Bank & Trust Co.* v. *Hall* (1923), 73 Colo. 17, 213 P. 116; *State Bank* v. *Murphy* (1923), 110 Neb. 526, 194 N. W. 442.

In the case of *Wertheimer & Degen* v. *Shultice, supra,* the court says:

"The description in the mortgage on its face is sufficient in law. Whether, on the facts, it is sufficient to put the purchaser on inquiry may, in the farther progress of the case, be a question for the jury."

There was evidence which showed a misdescription in the chattel mortgage. The jury, acting within its province, might have determined that such misdescription was of such a nature that the appellee, although aided by all the other provisions of the mortgage, and although making all the inquiry which the mortgage suggested, would not by the exercise of ordinary care have identified the property purchased as property covered by the mortgage. Under such circumstances we cannot say that the verdict of the jury is not sustained by sufficient evidence or that the trial court should have directed a verdict for the appellant.

Appellant attacks the action of the trial court in giving, of its own motion, each of instructions Nos. 5, 6, 7, 8 and 10. These instructions are attacked on the ground that in the instruction the court used the words, "described in said mortgage," or words of similar import, and that the court should have used the words, "covered by said mortgage." Appellant seeks to point out a distinction between the phrases which we are unable to appreciate. We believe the phrases would be equivalent in their effect upon the jury and that the jury was not misled or confused by.

any of the instructions given by the court of its own motion. None of the instructions of which appellant complains were, in our opinion, inconsistent with other instructions given by the court, nor would any of them tend to mislead the jury. All the instructions given by the court were fair to the appellant. They fully covered all the issues involved in the cause.

Appellant also objects to the refusal of the court to give each of its requested instructions Nos. 1, 2, 3, 5, 8, 9, 10, 11, 12 and 13. Instruction No. 1, tendered by appellant, was in effect the same as its motion for a directed verdict. We have carefully examined the other instructions tendered and we believe that they are fully covered by instructions given by the court in as far as they correctly state the law.

Appellant is also objecting to the action of the trial court in sustaining objection made by appellee to certain questions propounded by the appellant to the witnesses Joy Smith and Dane Secrist. These questions sought to bring out items of a conversation between Joy Smith and Dane Secrist that was held outside the presence of the appellee, Warren E. Parker, and after he had purchased the cattle. Appellant is urging that the conversation was proper because Dane Secrist, at the time the conversation was held, was an agent of appellee. It appears from the record that after appellee purchased the twenty-four (24) head of heifers he was going home and met Dane Secrist in the sale barn, and that Secrist, who had also purchased some cattle at the sale, told appellee that he wondered if there was a mortgage on the heifers, and that appellee told Secrist, "you find out and if there is let me know." Thereafter, there was no conversation between appellee and Secrist about what he found out. It is appellant's contention that this transaction created the rela-

tionship of principal and agent between appellee and Dane Secrist and that any knowledge obtained by Secrist would bind appellee, and that evidence of conversation between Secrist and Joy Smith was admissible although appellee was not present.

The definition of "agency" as adopted by the American Law Institute, Restatement of the Law, Agency, § 1, p. 7, is as follows:

"Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."

Agency is defined by 2 Am. Jur., § 2, p. 13, as follows:

"An agency may be defined as a contract either express or implied upon a consideration, or a gratuitous undertaking, by which one of the parties confides to the other the management of some business to be transacted in his name or on his account, and by which that other assumes to do the business and to render an account of it."

The conversation between appellee and Dane Secrist did not have the effect of making Dane Secrist an agent.

Dane Secrist did not consent to act for appellee and on his behalf and subject to his control.

Dane Secrist was interested personally in ascertaining whether there was a chattel mortgage on the cattle that he had purchased. Appellee merely suggested to him that if he found there was a chattel mortgage to let him know. This did not create an agency so that appellee would be bound by the knowledge of Dane Secrist, nor would conversations between Dane Secrist and a third party be admissible to bind appellee.

Appellant is also objecting to the action of the trial court in overruling its offer to introduce into evidence

Exhibits "I" and "J". Exhibit "I" was the original criminal affidavit filed by the State of Indiana against Joy Smith for the sale of mortgaged property that was purchased by appellee, and Exhibit "J" was the record of the Noble Circuit Court showing that Joy Smith entered a plea of guilty to the charge of having sold appellee the cattle that were covered by chattel mortgage of appellant. Appellee was not a party to the cause in which such criminal affidavit was filed; he did not sign the affidavit. The affidavit was made long after the purchase of the cattle by appellee, and the evidence clearly was not admissible in this action against appellee.

Finding no reversible error in the record, the judgment is affirmed and it is so ordered.

NOTE.—Reported in 34 N. E. (2d) 190.

ON PETITION FOR REHEARING.

BEDWELL, J.—Appellant, in its petition for a rehearing, claims that we did not consider the issues joined on the second paragraph of complaint, and that we did not consider the sufficiency of the evidence on the theory that appellee obtained possession of the cattle by virtue of the criminal act of the mortgagor.

It is appellant's contention that the mortgaged cattle were removed from Allen County in violation of the criminal laws of Indiana and the provisions of the chattel mortgage, and were sold at a community sale at Ligonier, in another county; and that under such circumstances the appellee cannot defend on the ground that he is an innocent purchaser for value. Appellant is assuming that the cattle purchased by appellee at the community sale at Ligonier were the identical cattle that were covered by the chattel mortgage assigned to appellant. As we stated in the

original opinion, this was one of the questions of fact for determination by the jury. Since there was conflicting evidence concerning such question, the verdict of the jury is conclusive upon appeal. If the jury determined that the cattle purchased by appellee at the community sale at Ligonier were not the identical cattle described in or covered by the chattel mortgage assigned to appellant, any contentions concerning the rights of a purchaser of personal property covered by a chattel mortgage, which property had been sold in violation of statute or the terms of the mortgage, are of no importance. The fact that a plaintiff in replevin is claiming title to personal property by virtue of a chattel mortgage, and that the plaintiff is further claiming that the property has been removed from the county where it was located at the time of the execution of the mortgage and sold to the defendant, without the consent of the assignee of such mortgage, in violation of the terms of the mortgage and in violation of criminal law, does not prevent the defendant at the trial from establishing the fact that the personal property purchased by him was not described in or covered by the chattel mortgage.

Appellant, also, earnestly insists that the undisputed evidence shows that the cattle purchased by appellee were the identical cattle covered by the chattel mortgage assigned to appellant, and that there is no substantial evidence that shows otherwise. We cannot conceive how any evidence concerning the identity of mortgaged personal property could be more substantial than the description contained in the chattel mortgage itself. This description specifically described the mortgaged cattle as "Branded-L." The cattle purchased by appellee at the community sale were not "Branded-L." Not a single item of evidence shows

that they were. It is true that appellant at the trial sought to prove that the description of the mortgaged cattle as "Branded-L" was a mistake, or that the same was inserted in the chattel mortgage merely for the purpose of the record of the original vendor and mortgagee, and not for the purpose of describing the mortgaged property, but the fact remains that notice to a purchaser concerning the existence of a chattel mortgage upon the property purchased must arise from the language used in the mortgage itself and such purchaser is not bound by any secret intention in the mind of the mortgagee who has falsely described the mortgaged property.

An eminent author on "Chattel Mortgages," in discussing the description of the mortgaged property, says:

"If the falsity of the description be a mistake, this may be cured by reforming the instrument in equity; but as against others acquiring interests in the property, such reformation is ineffectual after their interests have attached. Thus, if a mortgage of growing crops describe them as being upon land in a certain section, township, and range, and the description is a mistake in the number of the township and range, the mortgage is invalid as against a creditor who levies an execution on the crops which the parties intended to embrace in the mortgage." Jones on "Chattel Mortgages and Conditional Sales" (Sixth Ed.) Vol. 1, § 63, p. 127.

In the case of *Tindall, Administrator,* v. *Wasson* (1881), 74 Ind. 495, 501, the Supreme Court quotes from *Burns* v. *Harris* (1879), 66 Ind. 536, concerning the sufficiency of a chattel mortgage, the following:

" 'in such a mortgage the property ought to be described with reasonable accuracy, certainty, and particularity, so that the property intended to be mortgaged may be readily ascertained and identified. Indeed, the main object of the description is the identification of the property; for where the

description is doubtful or uncertain the property may be identified beyond all doubt by the ownership and possession thereof by the mortgagor. It must be regarded as settled law in this State that parol evidence is admissible to identify the particular property in a chattel mortgage.' "

After quoting the same the Supreme Court says:

"This we deem a correct statement of the law, but it does not mean, as appellant seems to think, that any description, no matter how slight, will be sufficient. The language quoted conveys no such meaning. It means that parol evidence may aid, not make, a description. In cases where the instrument suggests and indicates proper inquiry, parol evidence is always admissible to aid, but not to supply, a description. Properly understood, the language we have quoted is in entire harmony with the rule declared by the eminent author we have quoted from. Says this author, in speaking of the admissibility of parol evidence: 'It can not be used to supply what the parties have omitted, or to reject a reference in the description which is true.' Jones Chattel Mortgages, sec. 64."

We might add that the conflict in the evidence, as to whether the property purchased by appellee was a part of the property covered by the chattel mortgage assigned to appellant, does not arise solely from the fact that the cattle purchased by appellee were not "Branded-L," while the cattle described in the chattel mortgage, assigned to appellant, were described as "Branded-L." Joy Smith, the original purchaser and the mortgagor of the cattle, answered the following questions in the following manner:

"Q. At the time you signed your mortgage you knew that the description in that mortgage was correct, didn't you?

"A. Yes, supposed to be.

"Q. You knew they were branded with an 'L', you had seen the 'L' hadn't you?

"A. On some of them.

"Q. You read this chattel mortgage over before you signed it?

"A. Yes.

"Q. You read before you signed it these sixty head of Hereford heifers were branded 'L'?

"A. Yes, sir.

"Q. As a matter of fact they were branded 'L'?

"A. I think so."

When the E. & M. Cattle Company, consisting of Mary F. Souers and E. E. Souers, who were the original owners and mortgagees of the heifers, assigned their chattel mortgage to the appellant, they included in their assignment the following:

"For value received we hereby sell, assign and set over all our right, title and interest in and to a certain chattel mortgage covering 60 Hereford Heifers Branded -L given by Joy Smith to E. & M. Cattle Company, and filed . . ."

Appellant, in its brief in support of its petition for a rehearing, objects because we did not give particular and detailed consideration to instruction No. 7 given by the trial court of its own motion. Appellant contends that this instruction was inconsistent with instructions Nos. 8, 9 and 10 given by the court of its own motion and with instruction No. 4 tendered by appellant and given by the court. It also contends that the instruction was erroneous because it permitted the jury, in arriving at its verdict, to consider the question as to whether the cattle purchased by appellee were actually branded with a hot iron; and that it was erroneous because it limited the inquiry that the appellee was required to pursue to ascertain the identity of the property mortgaged, to such inquiry "as was available to the defendant."

Without setting forth all of these instructions in full it may be stated that instruction No. 7 permitted the jury to determine whether the words "Branded -L" were used in the mortgage to describe the mortgaged

heifers, and also permitted the jury to consider whether the heifers purchased by the appellee had any mark or marks of identification on either or any of them and whether they had in fact been branded. And, the court told the jury that they could consider such facts, if they were facts, along with the other language of the mortgage and further information disclosed by the evidence, that the appellee might have ascertained by pursuing the inquiries suggested and directed by the language of the mortgage, in determining whether the heifers purchased by the appellee were included in the sixty head of heifers mentioned in appellant's mortgage.

By instruction No. 8 the court told the jury that if it found from a preponderance of all the evidence that the appellee could have ascertained, upon inquiry which the mortgage indicated and directed, by the exercise of ordinary diligence and care, that the heifers he purchased were the identical heifers mentioned in the mortgage; and that if the evidence disclosed that the heifers bought by appellee were in truth and in fact a part of the heifers mentioned in the mortgage, that such was a sufficient identification of the heifers purchased as being a part of the heifers mentioned in the mortgage.

Instruction No. 9 told the jury that the description of mortgaged chattels contained in a mortgage need not be free from all inaccuracy, and that it was not necessary that it, in itself alone, contain a full and positive and complete identification of the chattels themselves.

By instruction No. 10 the court told the jury that the burden was upon the plaintiff to establish by a fair preponderance of all the evidence that the heifers purchased by the defendant were a part of the sixty head of cattle referred to in the mortgage; and that if

the description of the sixty head of heifers as set out in the mortgage was in fact incomplete and in part erroneous, still if by rejecting the erroneous part, enough of the description remained therein, which aided by information available to the defendant upon inquiry, was sufficient to identify the heifers purchased by the defendant as being part of the sixty head of heifers mentioned in the mortgage, then such mortgage was valid so far as the identity of the mortgaged property and the description thereof in the mortgage was concerned.

By instruction No. 4, tendered by appellant and given by the court, the court merely informed the jury that the sufficiency of the description in the chattel mortgage was a question for the court and not for the jury; that such description was reasonably accurate and was sufficient to enable third persons to identify the mortgaged property.

We find no inconsistency or conflict in these instructions that would mislead or confuse the jury.

The chattel mortgage was a part of the evidence in the cause. The language of such mortgage described the covered heifers as "Branded-L." The jury had a right to consider whether such words were used in such chattel mortgage for the purpose of describing the heifers. The fact that the mortgagee, who prepared the chattel mortgage, testified that she did not place the words in the mortgage for such purpose would not prevent the jury from determining that the same were so placed. It was within the province of the jury to determine whom it would believe or disbelieve. There is no validity to appellant's objection because the trial court limited the inquiries that appellee was required to make to ascertain the identity of

the mortgaged property to such inquiry "as was available to the defendant."

The court did not err in giving its instruction No. 7.

The petition for a rehearing is overruled.

NOTE.—Reported in 37 N. E. (2d) 5.